IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00216-MR

| | |
|---|---|
| DANIEL SHELTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 14].

**I.    BACKGROUND**

On October 18, 2017, the Plaintiff, Daniel Shelton ("Plaintiff"), filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of April 27, 2017. [Transcript ("T") at 88-89]. The Plaintiff's claims were initially denied on April 13, 2018, [id. at 88-102], and again denied upon reconsideration on July 10, 2018, [id. at 104-19]. On the Plaintiff's request,

a hearing was held on February 11, 2020 before an Administrative Law Judge ("ALJ"). [Id. at 18]. On February 27, 2020, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 18-37].

On June 7, 2021, the Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 6]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139

2

S. Ct. 1148, 1154, (2019) (internal quotation marks omitted); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional

3

investigation and explanation." Mills v. Berryhill, No. 1:16-cv-00025-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

### III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to

4

step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At

5

step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since April 27, 2017, the Plaintiff's alleged onset date. [T. at 20]. At step two, the ALJ found that the Plaintiff has the following severe impairments: "back disorder; bilateral shoulder disorder; arthralgia; obesity; depression; anxiety; and neurodevelopmental disorder." [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id.]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC to:

> [P]erform light work as defined in 20 C.F.R. 404.1567(b) except he would be limited to occasional climbing ramps and stairs, never climbing ladders, ropes, or scaffolds, and occasional balancing, stooping, kneeling, crouching, and crawling. Mentally, he can understand and remember simple and detailed instructions, but not complex instructions; he would be limited to occasional interaction with the general public, co-workers, and supervisors; he can be around other employees throughout the workday, but capable of only occasional conversations and interaction; and changes in the work setting would need to be infrequent and predictable with no fast paced tasks with strict production quotas; however, variable paced tasks with end of day production quotas would be acceptable.

[Id. at 22].

At step four, the ALJ identified the Plaintiff's past relevant work as tree cutter and habilitation tech. [Id. at 35]. The ALJ determined, however, that the Plaintiff "is unable to perform past relevant work as actually or generally performed." [Id. at 36]. At step five, the ALJ concluded that based on the Plaintiff's age, education, work experience, and RFC, the Plaintiff is able to perform other jobs existing in significant numbers in the national economy, including sorter, bakery worker, and folder. [Id. at 36-37]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Act from April 27, 2017, the alleged onset date, through February 27, 2020, the date of the ALJ's decision. [Id. at 37].

7

## V.  DISCUSSION

As one of his assignments of error, the Plaintiff argues that the ALJ "fail[ed] to perform a proper function-by-function evaluation of Plaintiff's ability to reach, handle, finger and feel when formulating the RFC." [Doc. 12 at 4]. Specifically, the Plaintiff argues that despite the Plaintiff's testimony regarding his back and shoulder pain "and the evidentiary support underlying his allegations, the ALJ included no limitations whatsoever on his ability to reach, handle, finger or feel in the RFC determination." [Id. at 5-6].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[1] SSR 96-8p; see also Mascio, 780 F.3d at 636 (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions,

---

[1] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing, or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

8

Case 1:21-cv-00216-MR   Document 16   Filed 09/23/22   Page 8 of 17

despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

The RFC represents "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for determining a claimant's RFC, id. § 404.1546(c), based on "all the relevant evidence in the [claimant's] case record." Id. § 404.1545(a)(1). In forming the RFC, the ALJ "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (brackets, emphasis, and internal quotation marks omitted); see also Monroe, 826 F.3d at 189. An ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Mascio, 780 F.3d at 636 (citing SSR 96-8p).

The ALJ sought to account for the Plaintiff's physical impairments by limiting the Plaintiff to "light work . . . except he would be limited to occasional climbing ramps and stairs, never climbing ladders, ropes, or scaffolds and occasional balancing, stooping, kneeling, crouching, and crawling." [T. at 22]. Notably, the ALJ did not include in the RFC any limitation regarding the Plaintiff's ability to reach, handle, finger or feel.

9

Regarding the Plaintiff's complaints of pain in his back and shoulders, the ALJ concluded that "[a]lthough the [Plaintiff] has impairments that could reasonably be expected to cause some pain or discomfort, the medical evidence fails to reveal findings to support pain to the degree alleged." [Id. at 31]. The ALJ cited various evidence from the record, stating that:

> [t]he claimant received treatment for a low back injury in October 2016, but his condition improved and he was released to return to work without any restrictions in November 2016 (Exhibits 1F and 7F). The claimant injured his right shoulder in April 2017. An MRI of the right shoulder dated May 9, 2017 showed possible superior labral (SLAP) tear (Exhibits 1F, 3F, 7F, and 16F). He received treatment at Carolina Hand and Sports Medicine during the period May 2017 through July 2017. Dr. West noted that the claimant had not started physical therapy and that he declined injections. He reported that the claimant did not want to work and he encouraged him that his shoulder did not require restrictions (Exhibit 9F). However, physical therapy for the right shoulder was not done (Exhibit 14F). The physicians with Western North Carolina Community Health Services treated the claimant with medications for his cervicalgia, low back pain, and arthralgias during the period February 2019 through September 2019. They noted that rheumatologic workup was negative and that x-rays of the cervical spine, shoulders, hands, lumbar spine, and elbows were negative (Exhibit 17F). Dr. Jennifer Morales with Carolina Spine saw the claimant for evaluation in December 2019. She noted that the claimant had facet arthropathy, L5-S1 disc bulge with annular tear with degenerative CCS, and mild bilateral NFS. She discussed treatment options including steroid injection, but noted that the claimant was very

10

> hesitant due to phobia of needles. However, the record indicates that he previously underwent injection in May 2017. The claimant was referred for physical therapy and prescribed Meloxicam. However, the record indicates that he was only seen for the initial visit at physical therapy and did not follow up after that time (Exhibits 17F, 19F, and 20F). The undersigned notes that the record does not show more aggressive treatment such as ongoing pain medications or referral to a pain clinic . . . While the claimant reported that he could only lift eight to 10 pounds, could not lift a gallon of milk all day, walk 10 minutes, sit 10 to 15 minutes, and could not climb, stoop, bend, crouch, or crawl, the undersigned finds that this is apparently self-limiting as no treating physician has limited the claimant to this extent.

[Id. at 31-32].

The ALJ further cited additional medical opinions from the record. Regarding the opinion of Dr. Richard Gloor, the ALJ stated that:

> [Dr. Gloor opined] that the [Plaintiff] would be expected to have significant difficulty working overhead due to both shoulder restrictions and some loss of pincer grip strength and would be expected to have difficulty moving freely and completing much physical work.

[Id. at 33]. However, the ALJ found Dr. Gloor's opinion to be unpersuasive because the Plaintiff completed the examination, "Dr. West noted that the right shoulder did not require restrictions[,] and . . . records from Western North Carolina Community Health Services show that the [Plaintiff's] shoulders had full strength." [Id.].

The ALJ also cited the opinion of Theresa Oursler, a family nurse practitioner ("FNP") at Western North Carolina Community Health Services, who opined that the Plaintiff "could walk 10 minutes without rest, sit continuously 20 minutes, stand continuously 10 minutes, lift 20 pounds, carry less than 10 pounds, and had limitation in repetitive use of hands and fingers." [Id.]. The ALJ similarly found FNP Oursler's opinion to be unpersuasive because records from Western North Carolina Community Health Services show that:

> [T]he [Plaintiff] had tenderness with limited range of motion of multiple joints with decreased grip strength on occasion, but that strength was otherwise full . . . [T]heir records show that rheumatologic workup was negative and that x-rays of the cervical spine, shoulders, hands, lumbar spine, and elbows were negative. Their records show that orthop[e]dic consult diagnosed tendinopathy and that the claimant was maintained on medications.

[Id. at 34].

Thus, throughout the ALJ's RFC assessment, he recited evidence that appears to both support and contradict the Plaintiff's statements about the limiting effects of his impairments. However, the ALJ never reconciled this disparate evidence or explained how the evidence supports his conclusion that the Plaintiff does not require *any* limitation regarding his ability to reach, handle, finger or feel. For example, the ALJ repeatedly cited to test results

12

that show the Plaintiff has full strength in his shoulders and "negative" rheumatological and x-ray results related to his spine, shoulders, elbows, and hands. However, the ALJ did not explain why those results are necessarily inconsistent with the Plaintiff's complaints of pain, why those results are necessarily inconsistent with FNP Oursler and Dr. Gloor's findings and opinions regarding the Plaintiff's limitations, or how those results compare to other medical findings that are cited by the ALJ and that appear to support the Plaintiff's statements.

Further, the ALJ repeatedly stated that the Plaintiff declined treatment for his back and shoulder pain by declining steroid injections and failing to continue with physical therapy treatments recommended by his physicians. [Id. at 31]. Social Security Ruling 16-3p instructs that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of the record." SSR 16-3p. However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree

of his or her complaints." Id.  For instance, an ALJ may consider a claimant's inability to afford treatment or side effects from prescription medications that are "less tolerable than the symptoms" of the claimant's impairments.  Id.; see also Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) ("A claimant may not be penalized for failing to seek treatment she cannot afford.").

Here, when the ALJ asked the Plaintiff why he declined additional treatment for his back and shoulder pain, the Plaintiff testified that he did not have additional injections because, after he had an injection in his shoulder, "it made it twice as worse as it was."  [T. at 62].  The Plaintiff further testified that he did not complete physical therapy because he "couldn't afford it." [Id.].  Although the ALJ appears to rely on the Plaintiff's failure to comply with treatment as one factor in reaching his conclusion that the Plaintiff's complaints of pain are inconsistent with the record, the ALJ does not acknowledge the Plaintiff's reasons for declining additional treatment.  As the ALJ did not address the Plaintiff's reasons for declining additional treatment when formulating the Plaintiff's RFC, the Court is left to speculate as to whether the ALJ considered this information, and if it was considered, how it was considered.  See Perryman v. Kijakazi, No. 1:21-cv-00305, 2022 WL 1462688, at *5 (M.D.N.C. May 9, 2022) (finding that the ALJ's failure to

explain how he considered the claimant's alleged inability to afford treatment frustrated meaningful review of the ALJ's decision).

Moreover, the ALJ also stated that the Plaintiff's activities of daily living were inconsistent with his statements concerning the severity of his limitations. [T. at 32]. The ALJ discussed the Plaintiff's activities as follows:

> In describing his activities of daily living, the [Plaintiff] reported that he lived with his wife and her father and that he watched television, sat outside on the porch, cared for his dog, could go out alone, could count change and handle a savings account, listened to music, cared for his children, prepared simple foods, did laundry, mowed the yard with a riding mower, drove, shopped in stores, rode around, spent time with his girlfriend and her dad, went to his dad's and they rode around, had no problems getting along with others, and was independent in dressing and grooming (Exhibits 4E, 10E, 4F, and 11F). The undersigned notes that these activities are supportive of the above residual functional capacity.

[Id.]. While the ALJ recited this evidence from the record, the ALJ again failed to explain how these activities are probative of the severity of the Plaintiff's physical impairments or why these activities are inconsistent with the Plaintiff's statements about the intensity, persistence, and limiting effects of his physical impairments, including his complaints of back and shoulder pain.

The ALJ's decision "is sorely lacking in the analysis" necessary for the Court to meaningfully review the ALJ's conclusions. Mascio, 780 F.3d at

15

636-37. While the ALJ recited certain evidence in the record, "it is not sufficient for an ALJ to simply recite *what* the evidence is." Mills, 2017 WL 957542, at *4. Instead, an RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio, 780 F.3d at 636 (quoting SSR 96-8p).

A "reviewing court cannot be left to guess as to how the ALJ arrived at his conclusions." Mills, 2017 WL 957542, at *4. As such, this matter must be remanded because the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189.

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. On remand, the ALJ's decision should include a narrative discussion of the evidence, as required by SSR 96-8p, explaining how he reconciled that evidence to his conclusions. In light of this decision, the Plaintiff's other assignments of error need not be addressed at this time but may be addressed on remand.

## ORDER

**IT IS THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 11] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 14] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 23, 2022

Martin Reidinger
Chief United States District Judge